## HANKS FOUNDRY CO. *v.* WOODSTOCK IRON WORKS.

The petition, as amended, set forth a cause of action, and was not subject to the objection taken in the demurrers.

Submitted July 18,—Decided December 13, 1906.

Breach of contract.     Before Judge Wright.     Floyd superior court.   October 2, 1905.

The Woodstock Iron Works brought suit against the Hanks Foundry Company, alleging that on the 4th day of February, 1903, the defendant entered into a contract with plaintiff, which is embodied in the following writing:

"Order No.       Salesman No. 14.   C. E. Foust representing Rogers, Brown & Co., Birmingham, Ala. Pig Iron, Coal and Coke. Sale memorandum Feb. 4th; 1903.   Sold to Hanks Foundry Company, Rome, Ga., for account of Woodstock Iron Works, 100 tons 2 soft Woodstock at price of $19.25 per ton of 2240 lbs., F. O. B. Anniston, Ala.   Delivery 25 tons each April, May, June, and July via present freight rate per ton from ———— to ————.   We do not guarantee freight rates.   Weights to govern both buyer and seller are the railroad weights nearest shipping point.   Shipments on this order are at buyer's risk after being received by railroad. Delivery subject to strike, accidents, car supply, etc.   Terms: Sight draft attached to bill of lading.

Accepted.   Hanks Foundry Co., J. D. Hanks.

C. E. Foust, Salesman."

It is alleged that the article referred to in the writing was pig iron; that the plaintiff, upon receiving the order, accepted the same in every particular and in all its details; and that it has complied with the terms and conditions of the contract.   The plaintiff promptly commenced to furnish the pig iron, as ordered, until September 2d, when all had been furnished except 48 1/2 tons, when the defendant declined and refused to take said 48 1/2 tons, and practically refused to accept or pay for the same.   It is alleged that on the date last mentioned pig iron had declined in price, and was, at that time, worth only $10.25 per ton; whereby the plaintiff has been damaged $9.00 per ton in the sale of the pig iron embraced in the contract which the defendant refused to receive. By amendment it is alleged that on February 4, 1903, the plaintiff accepted the contract of that date, and began the shipment of the pig iron and was ready and willing to ship the same at the rate

of 25 tons for each of the months of April, May, June, and July,. 1903, when at the special instance and request of the defendant. it began to ship the pig iron at intervals, and as ordered and directed by the defendant; plaintiff and defendant agreeing that the contract above referred to should remain of force, and that the pig iron should be shipped and delivered as called for and ordered,. through the remaining months of the year 1903. This was done for the special benefit of the defendant. The contract was treated as of force, through a continuous correspondence between plaintiff and defendant, until the date of the refusal to accept the pig iron above referred to. It is alleged that the defendant knew, at the date of the contract, that it was contracting with plaintiff; that the statement, "for account of the Woodstock Iron Works," in the contract, was understood by plaintiff and defendant to mean a purchase from plaintiff, as seller, by defendant, as buyer, and was so acted on and treated through the entire transaction; and that the defendant knew that Rogers, Brown & Co. and C. E. Foust were agents and subagent of plaintiff, in securing the order contained in the contract. The defendant filed demurrers, both general and special, which being overruled, the defendant excepted.

*Denny & Harris,* for plaintiff in error.    *F. W. Copeland,* contra..

COBB, P. J. (After stating the facts.) The writing is signed by the defendant, but it is not signed by the plaintiff, unless the signature of Foust is to be treated as the signing of its authorized agent and binding it to the terms of the contract. The defendant contends that the plaintiff was not bound by the writing as originally signed, and therefore that the undertaking was unilateral; it being bound and the plaintiff not bound. The plaintiff alleges that. it accepted the contract, and, in accordance with its terms, shipped a portion of the pig iron embraced therein, which was accepted and paid for by defendant. The writing on its face set forth that the sale was made for the account of the Woodstock Iron Works. If Foust was the agent of the Woodstock Iron Works, as he contracted in the name of his principal, the writing, although signed by him in his individual name, would prima facie bind his principal, although the writing was signed only in his individual name. Of course, if Foust had no authority to make the contract in behalf of the Woodstock Iron Works, that company would not be bound, and could repudiate it at their pleasure. If he did have authority,.

they were bound by his signature. If he did not have authority, they should have repudiated it promptly upon notice that it had been made. Under the allegations of the amendment, he not only had authority to make the contract, but this authority was known to the defendant at the time it was made. For the purposes of the demurrer, therefore, the contract as set out in the original petition is to be treated as a binding contract between the plaintiff and defendant.

The original petition did not allege the shipment of the 48 1/2 tons of pig iron within the dates set forth in the original contract; neither did it allege any effort to ship during that time; and hence the original petition was defective for want of these averments. The amendment alleges that the terms of the original agreement, as to the time of shipment, were changed by mutual consent, and that the shipments were made at any time during the year 1903, when ordered by the defendant. It is nowhere alleged that the defendant ordered any shipment during that period. It is alleged, however, that on September 2, 1903, the defendant peremptorily refused to accept or pay for the remaining portion of the pig iron embraced in the contract, which was, up to that time, undelivered. This constituted a breach of the contract as it existed in its altered shape. Under the allegations, the defendant was bound to receive the pig iron during the year 1903 at such dates, during that period, as the defendant should order the same. There was nothing in the new agreement which relieved the defendant from the obligation to take the pig iron, but the time at which it was to take it was to be determined by the defendant within the limits fixed, that is, during the remaining portion of the year 1903. When, on September 2, 1903, the defendant refused absolutely to accept any more pig iron under the contract, this was a breach of the contract, and the plaintiff was entitled to treat the contract as broken on that date and recover the difference between the contract price of the pig iron and the market price on that date, which is the damage alleged and the only damage alleged to have resulted from the breach. The absolute refusal to accept the pig iron under the contract would amount to a waiver of any of the conditions in the contract necessary to an acceptance if the pig iron had been shipped in strict accordance with the contract; that is, in the absence of such absolute refusal, it would have been incumbent upon the

plaintiff, before it could recover, to have shown that the defendant had ordered the delivery on a certain day, and that this delivery had been made in the manner prescribed in the contract, and that a sight draft had been drawn in accordance with the stipulations in the agreement. As the plaintiff was put on notice that the pig iron would not be accepted at all, it was under no obligation to go through the form of placing the pig iron on board of the cars at Anniston, shipping it to Rome, and drawing a sight draft therefor, provided it appeared that the plaintiff was in a position, on that date, to have complied with its contract and made the delivery if the delivery had been called for; and this is alleged in the petition. The petition as amended set forth a cause of action, and was not subject to any of the objections raised in the demurrers.

*Judgment affirmed. All the Justices concur.*